IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Victor M. Gonzalez, )<br>*As the Special Administrator of the* )<br>*Estate of Roger Gonzalez, deceased*, )<br>                               )<br>       *Plaintiff,* )<br>                               )<br>   v.                           )<br>                               )<br>Arthur Davida, *et al.*, )<br>                               )<br>       *Defendants.* ) | Case No. 15 CV 00776<br><br>Magistrate Judge Iain D. Johnston |

**ORDER**

Plaintiff's Motion to Compel [176] is granted. Wexford shall provide the 56 pages of documents to Plaintiff by September 11, 2018. Telephonic status hearing remains set for September 13, 2018 at 9:00 a.m.

**STATEMENT**

**I. Background**

Plaintiff Victor Gonzalez, as special administrator, brings claims against several defendants concerning Roger Gonzalez's death while incarcerated at the Robinson Correctional Center and his related medical treatment at that facility and others. Dkt. 110. Following Judge Reinhard's ruling on motions to dismiss, Plaintiff's claims for deliberate indifference and state medical malpractice remain against Defendants Dr. Arthur Davida, Dr. Stephen Israel, Dr. Roderick Matticks, and Wexford Health Sources, Inc. ("Wexford").

As part of written discovery, Plaintiff requested that Wexford produce the following:

> All documents related to any hearing dealing with mortality or morbidity regarding the care and treatment of the decedent alleged in the Complaint.

Plaintiff's Motion at 11, Dkt. 176. Wexford objected as follows:

> Defendant objects to this Request as it calls for privileged information under the Illinois Medical Studies, attorney-client privilege. As such, see attached Amended Privilege Log.

*Id.* As a result, Wexford withheld 56 pages of documents responsive to Plaintiff's request.

Before the Court is Plaintiff's Motion to Compel ("Motion") the 56 pages of documents that were withheld. Dkt. 176. On July 19, 2018, the Court held a hearing on the Motion and received the withheld documents for an *in camera* inspection. At that hearing, counsel for Wexford stated that it was only withholding the 56 pages of documents as privileged under the Illinois Medical Studies Act, 735 ILCS 5/8-2101, and was not asserting attorney-client privilege. Thereafter, Wexford filed a response brief with a supporting declaration from its Northern Illinois Regional Medical Director Dr. Arthur Funk, and Plaintiff replied.

## II. Analysis

Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery of any matter that is not privileged and is both relevant to the claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Privileges asserted in federal court are governed by Federal Rule of Evidence 501, which provides that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." Fed. R. Evid. 501.

Plaintiff has asserted claims of deliberate indifference under 42 U.S.C. § 1983 against Drs. Davida and Matticks and state medical malpractice against all Defendants. Even when federal and state law claims are at issue, the court will apply federal privilege law. *See Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981) ("[I]t would be meaningless to hold the communication privileged for one set of claims and not the other.") (citation omitted).

It is Wexford's burden to show that the privilege they asserted under the Illinois Medical Studies Act protects the withheld documents from disclosure and that the privilege applies in this case. *See Lund v. City of Rockford*, No. 17 CV 50035, 2017 U.S. Dist. LEXIS 196202, at *9 (N.D. Ill. Nov. 29, 2017) ("When a party asserts an evidentiary privilege, the burden falls on that party."). Whether to recognize a privilege is a mixed question of law and fact, and "there is a presumption against the creation of new privileges." *Id.* (citing *Jenkins v. DeKalb County*, 242 F.R.D. 652, 656 (N.D. Ga. 2007)); *see also University of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990) ("[P]rivileges contravene the fundamental principle

that the public . . . has a right to every man's evidence.") (internal quotation marks and citation omitted); *United States v. Nixon*, 418 U.S. 683, 710 (1974) (finding that evidentiary privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth").

The Illinois Medical Studies Act provides as follows:

> All information, interviews, reports, statements, memoranda . . . of a health care practitioner's professional competence, or other data of . . . committees . . . used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care . . . shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges. . . .

735 ILCS 5/8-2101. The Illinois Medical Studies Act further provides that such information "shall not be admissible as evidence, nor discoverable in any action of any kind in any court." 735 ILCS 5/8-2012.

Wexford has withheld 56 pages of documents, many of which are duplicate records, of reports and evaluations of medical care generated in response to Roger Gonzalez's death on the grounds that they are privileged under the Illinois Medical Studies Act. The main documents at issue are Dr. Matticks' Confidential Peer Review Material – Death Review and Death Summary Memorandum. The parties agree that the withheld documents are both relevant and protected under the Illinois Medical Studies Act. Accordingly, the Court will focus on whether Wexford has met its burden in showing that this Court should recognize the state medical peer review privilege in this case under federal common law.

As Plaintiff points out, neither the Supreme Court nor any circuit courts have recognized the medical peer review privilege. Plaintiff has also cited to numerous cases rejecting the privilege under the Illinois Medical Studies Act in federal actions. Plaintiff's Motion at 5-6, Dkt. 176. The Court has also found that numerous district courts in the Seventh Circuit have declined to adopt the medical peer-review privilege in section 1983 litigation. Plaintiff also rightfully points out this Court's rejection of a similar privilege in *Lund*, No. 17 CV 50035, 2017 U.S. Dist. LEXIS 196202 (refusing to recognize the self-critical analysis privilege and allowing the production of a un-redacted police department's office of professional standards internal investigative report).

Nevertheless, the Seventh Circuit has articulated a balancing test to determine if a privilege should be recognized. *Shadur*, 664 F.2d at 1061-62. Under

that test, the federal court should weigh the need for the truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will, in fact, protect the relationship in the factual setting of the case. *Id.*

In support of expanding federal common law to recognize the medical peer review privilege, Wexford makes two main arguments. First, Wexford argues that the privilege should apply because the policies behind the protection of documents in the Illinois Medical Studies Act are drafted with state medical malpractice claims, such as Plaintiff's claims, in mind. Wexford relies heavily on the decision in *Warren v. Dart*, No. 09 CV 3512, 2013 U.S. Dist. LEXIS 155445 (N.D. Ill. Oct. 30, 2013) to support recognizing the peer review privilege in this case. As the *Warren* Court pointed out, the purpose of the Act is "to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." *Warren*, No. 09 CV 3512, 2013 U.S. Dist. LEXIS 155445, at *16 (citing *Roach v. Springfield Clinic*, 623 N.E.2d 246, 251 (1993) (internal quotation marks omitted)). Wexford argues that this policy would be furthered if the privilege were recognized in this case. This Court disagrees.

The Illinois Supreme Court has stated that the Illinois Medical Studies Act is premised on the belief that, absent the privilege, "physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." *Roach*, 623 N.E.2d at 251 (citations omitted). Wexford has not directly argued, and this Court does not believe, that disclosure in this case would hinder the review process. This Court is persuaded by the reasons set out in *Johnson v. Dart*, 309 F. Supp. 3d 579 (N.D. Ill. 2018), that the Court must consider the differences between a civilian mortality review and a mortality review of a deceased inmate. The court in *Johnson v. Dart* stated:

> [U]nique considerations dramatically weaken the case for recognizing the privilege in a post-death investigation ordered by a jail. *See Jenkins v. DeKalb Cnty, Georgia*, 242 F.R.D. 652, 660 (N.D. Ga. 2007). "Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered." *Agster*, 422 F.3d at 839. Therefore, "[a] review of a deceased inmate is not the straightforward evaluation of medical care that occurs in the civilian context." *Jenkins*, 242 F.R.D. at 660. Compared to a civilian mortality review, a mortality review of a deceased inmate is likely to contain far more "nonmedical" information such as whether and when jail officials notified medical officials of a particular problem, whether there was a reason for nonmedical officials to have monitored a situation more closely, and perhaps provide insight into jail customs or policies. *Id.* "In these

circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided." *Agster*, 422 F.3d at 839.

*Johnson v. Dart*, 309 F. Supp. 3d at 582.

Additionally, another court that declined to recognize the privilege in a case dealing directly with jail practices, as opposed to medical malpractice claims, similarly cited *Agster* for the proposition that "[g]iven the demands for public accountability [in cases involving the death of an inmate], which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege." *Johnson v. Cook County*, No. 15 C 741, 2015 U.S. Dist. LEXIS 115868, 2015 WL 5144365, *4 (N.D. Ill. Aug. 31, 2015) (slip op.) (citing *Agster*, 422 F.3d at 839).

Although Wexford points out that *Johnson v. Dart* and *Johnson v. Cook County* dealt with plaintiffs that had pending *Monell* claims, the Court is persuaded by the underlying purpose of the Illinois Medical Studies Act in relation to the review process in a jail setting, not just the fact that Plaintiff in this case no longer has a pending *Monell* claim against Wexford. The Court does not believe that disclosure in this case would compromise the review process and in turn the ability to improve inmate care.

Moreover, Plaintiff has federal deliberate indifference claims pending against Drs. Davida and Matticks, and he claims that the withheld documents are directly relevant to whether Drs. Davida and Matticks complied with Wexford's policies and practices. The fact that the documents are also relevant to Plaintiff's state law medical malpractice claims does not diminish Plaintiff's need for them to prove his deliberate indifference claims. *Cf. Freeman v. Fairman*, 917 F. Supp. 586, 588 (N.D. Ill. 1996) (applying the privilege under the Illinois Medical Studies Act because the only claims to which the report were relevant were state claims).

Second, Wexford argues that Plaintiff has access to the same medical information utilized to draft all the documents Wexford seeks to withhold, including Roger Gonzalez's medical records and depositions of Roger Gonzalez's treating physicians. However, Plaintiff points out that other than Wexford's representation in its brief, he has not been provided with the specific information that was used to generate the documents as was done in *Warren*, No. 09 CV 3512, 2013 U.S. Dist. LEXIS 155445.

In *Warren*, the court ultimately recognized the medical peer review privilege because the plaintiffs, who alleged deliberate indifference and *Monell* claims against the defendants, were unable to articulate how the peer review procedure and report would shed light on the causes of the decedent's death that were not

otherwise available from the evidence already produced. *Warren*, No. 09 CV 3512, 2013 U.S. Dist. LEXIS 155445. The doctor that investigated the inmate's death and completed a Mortality Review Report for Patient Safety and Quality Improvement provided an affidavit identifying all the materials he relied on in generating his report. *Warren*, No. 09 CV 3512, 2013 U.S. Dist. LEXIS 155445, at *9, 10. The Court specifically found that the plaintiffs had access to all of that evidence in discovery and failed to articulate why they needed the doctor's assessment of that evidence to evaluate the causes of the inmate's death. *Warren*, No. 09 CV 3512, 2013 U.S. Dist. LEXIS 155445, at *17.

By contrast in this case, Wexford has provided limited information about the withheld documents or the information relied on when creating them. Wexford provided Dr. Funk's declaration, but he did not author any of the reports, and therefore offers no evidence on the source of the information used to generate them. His declaration mainly shows that the documents are protected under the Illinois Medical Studies Act. Even after reviewing these documents *in camera*, the Court is unsure whether Plaintiff would have access to all of the information reviewed in formulating the reports and evaluations because only the Confidential Peer Review Material – Death Review identifies what was relied on. Even then, the report identifies categories of people that were consulted and this Court is unsure whether that information is still available to Plaintiff. Therefore, the Court finds that Plaintiff's need for the withheld documents, which are directly relevant to his deliberate indifference claims, outweighs the policy sought to be furthered by the Illinois Medical Studies Act privilege in this case.

### III. Conclusion

The Court finds that Wexford has failed to support its heavy burden to show that the medical peer review privilege should be recognized. Therefore, the Court declines to recognize the privilege asserted under the Illinois Medical Studies Act in this case, and grants Plaintiff's Motion to Compel. Dkt. 176.

Dated: September 5, 2018   By: _____
Iain D. Johnston
United States Magistrate Judge